## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

EDGARDO L. LOPEZ,

                          Plaintiff,

          v.                                    9:13-CV-952 (BKS/ATB)

N. WHITMORE, et al.,

                          Defendants.

EDGARDO L. LOPEZ, Plaintiff, *pro se*
CHRISTOPHER W. HALL, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

### REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c) by the Honorable Brenda K. Sannes, United States District Judge.

In this civil rights action, plaintiff claims that in May 2013, several correctional officers assaulted him during his confinement at the Marcy Correctional Facility ("Marcy") in retaliation for filing a grievance, and then issued several false disciplinary charges against plaintiff to cover up their actions. (Amended Compl., Dkt. No. 32, ¶¶ 26-55). Plaintiff amended his complaint in November 2013 to further allege that the disciplinary hearing related to these charges violated his due process rights. (*Id*. ¶¶ 60-74). Plaintiff also raises several state law tort claims in connection with the alleged assault. (*Id.* ¶ 77, 80, 82).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 69). Plaintiff has opposed the motion. (Dkt.

No. 73)[1].  Defendants did not submit a reply.

For the reasons set forth below, this court recommends that defendants' summary judgment motion be granted.  Plaintiff's claims should be dismissed because no rational fact finder could conclude that he exhausted his administrative remedies as to the assault and retaliation claims as required before filing an action under 42 U.S.C. § 1983, or that plaintiff failed to receive all the process that he was due during his disciplinary hearing.  Plaintiff's state law claims, raised pursuant to the court's supplemental jurisdiction, should also be dismissed.

## DISCUSSION

### I.    Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts

---

[1] Plaintiff requested oral argument on defendant's motion.  That request is denied, and this court will make its report and recommendation based upon the parties' papers and the record.

2

by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11 (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own

testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.")).

## II.    Exhaustion of Administrative Remedies

Plaintiff has alleged that he was the victim of two separate assaults by Marcy Correctional Officers on the morning of May 7, 2013. (Amended. Compl., Dkt No. 32, ¶¶ 31-38, 43).  Plaintiff further alleges that the assaults were in retaliation for a prior grievance which he had submitted against one or more of the defendants, and that the defendants then issued him disciplinary tickets for failing to obey orders and possessing a weapon in order to cover up their actions[2]. (*Id.* ¶ 55).  Based on the record discussed below, the court concludes that no reasonable fact finder could conclude that the plaintiff had completed the administrative grievance process for these claims prior to commencing this federal proceeding.  Accordingly, this court recommends that plaintiff's First Amendment retaliation claims and Eighth Amendment cruel and unusual punishment claims be dismissed for failure to exhaust administrative remedies.

---

[2] Defendants assert that plaintiff has failed to state a claim in connection with the misbehavior reports, since plaintiff's allegations of retaliation are conclusory and defendant was found guilty based upon the evidence at his disciplinary hearing. (Def. Mem. of Law, Dkt. No. 69-4, at 8-10).  In his response, plaintiff has requested that the court dismiss the claim for retaliatory misbehavior reports in order to focus on the assault claim.  (Pl.'s Mem of Law, Dkt. No. 73-1, at 9).  Because I am recommending that defendants be granted summary judgment on the retaliation claim due to plaintiff's failure to exhaust administrative remedies, I do not need to address whether summary judgment should be granted on the merits on this claim.

## A. Legal Standards

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion requirement applies, *inter alia*, to excessive force claims)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court held that, in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the superintendent of the relevant facility. *Id*. § 701.5(c). Adverse decisions at the superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).

At the same time that the Second Circuit decided *Giano*, it also decided four related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and specifying various instances in which the requirement could be waived or excused.[3] Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies

---

[3] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.* Whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*, has been a matter of some discussion.[4] Although the Second Circuit has not explicitly held that *Hemphill* remains good law, it has applied the three-part inquiry in post-*Woodford* cases. *See, e.g.*, *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011); *Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009).

### B. Application

Plaintiff filed a grievance on June 17, 2013, after being transferred to Downstate Correctional Facility ("Downstate"), alleging that on May 7, 2013, certain Marcy Correctional Officers verbally and physically abused him following a pat-down frisk while plaintiff was en route from the Marcy housing unit to the facility's infirmary. (Def. Statement of Material Facts, Dkt No. 69-1, ¶ 4; Pl's Resp. to Def. Statement of Material Facts, Dkt. No. 73, ¶ 4). This grievance was acknowledged and forwarded for investigation by IGRC on June 19, 2013. (Dkt. No. 73-2, Pl's Ex. 3(B)). On September 17, 2013, the Downstate Superintendent denied plaintiff's grievance. (Hall Aff., Dkt. No. 69-3, Ex. 3; Dkt No. 73-2, Pl's Ex. 3(C)). On September 23, 2013, Plaintiff appealed this determination to the Central Office Review Committee. *Id.* On June 11, 2014, CORC issued its decision denying the grievance, the final step in the

---

[4] See, e.g., *Newman v. Duncan*, 04-CV-395 (TJM/DRH), 2007 WL 2847304, at * 2 n. 4 (N.D.N.Y. Sept. 26, 2007); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 285-86 n.7 (S.D.N.Y. 2009).

administrative process. (Dkt. No. 73-2, Pl's Ex. 3(D)).

While the administrative grievance process was ongoing, Plaintiff commenced this litigation on August 12, 2013, alleging essentially the same facts as his grievance. (Dkt. No. 1, Compl. ).  Plaintiff later submitted an Amended Complaint dated November 3, 2013 which restated the assault and retaliation claims and added a due process claim arising out of the related disciplinary hearing. (Dkt. No. 32, Amended Compl.)

In their motion for summary judgment, defendants argue that plaintiff failed to exhaust his administrative remedies relating to his assault and retaliation claims prior to commencing this federal litigation[5].  Plaintiff argues that his administrative remedies were exhausted upon filing his grievance on June 17, 2013, and that "[i]t is common knowledge that one not need to wait on the CORC decision in order to file a civil action against New York State Department of Corrections and Community Supervision (NYSDOCCS) employees for committing such brutally physical body harm upon plaintiff."  (Pl's Mem. of Law, Dkt. No. 73-1, at 7).  Plaintiff also asserts that his administrative grievance was not resolved within a reasonable time, as it took three months to receive the Downstate Superintendent's determination, and another ten months before the CORC determination was issued. (*Id.* at 8).

"The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

---

[5] Defendants had previously raised the failure to exhaust administrative remedies as an affirmative defense in their answer to the Amended Complaint. (Dkt. No. 37, Def. Answer, ¶ 12).

they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Plaintiff did not complete the state administrative grievance process for the assault and retaliation claims before commencing this litigation, and therefore failed to exhaust his administrative remedies in accordance with the PLRA. The only excuse offered by plaintiff, that the administrative grievance process took an unreasonably long time, is unavailing. (Pl's Mem. of Law, Dkt. No. 73-1, at 8). If the superintendent failed to timely respond to plaintiff's grievance, Plaintiff needed to appeal that failure to the CORC before commencing this litigation. "If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA." *Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. Mar. 11, 2003) (Sharpe, M.J.).[6]

In applying the Second Circuit's three-party inquiry, plaintiff has offered no evidence to suggest that the grievance process was unavailable to him, that the defendants are estopped from asserting the defense of failure to exhaust, or that there are any other special circumstances under *Hemphill* and its progeny that would excuse plaintiff's failure to exhaust his administrative remedies.

In support of defendants' motion, Jeffrey Hale, the DOCCS Assistant Director of the Inmate Grievance Program ("IGP") and the custodian of records for CORC, which

---

[6] The New York regulations specifically state that if a grievance is not decided within the time limits provided, the inmate may appeal to the next step. 7 N.Y.C.R.R. § 701.6(g)(ii)(2). In *Pacheco v. Drown*, 9:06-CV-20, 2010 WL 144400, at *19 & n.21 (N.D.N.Y. Jan. 11, 2010), U.S. District Judge Glenn Suddaby held that the failure by the IGRC or the Superintendent to timely respond to a grievance or first level appeal may be appealed to the next level, including the CORC, in order to properly complete the grievance process. *Accord, Murray v. Palmer*, 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, *2 & nn. 4, 6 (N.D.N.Y. March 31, 2010).

maintains files of grievance appeals by inmates, submitted a declaration based upon his review of those records. (Dkt. No. 69-2). Ass't Dir. Hale certified that CORC records contained five separate grievances filed by plaintiff for the period between September 2012 and May 2014. (Hale Decl., Dkt. No. 69-2, ¶¶ 6-7, 10, and Ex. B.).

During his August 26, 2014 deposition, plaintiff acknowledged that he was familiar with the DOCCS grievance process and understood that CORC is the final administrative step for deciding an inmate grievance. (Hall Aff, Dkt No. 69-3, Ex. 1 at 18). While plaintiff asserts that he was discouraged from reporting the alleged assaults immediately afterwards by threats from one or more of the defendants, plaintiff not only filed a detailed administrative grievance, but also raised the assault and retaliation allegations during his disciplinary hearing. *See, e.g., Black v. Fischer*, No. 12 Civ. 2341, 2013 WL 1314940, at *8-9 (S.D.N.Y. Mar. 28, 2013) (the plaintiff's claim that he was deterred from pursuing grievances by threats from a defendant was overcome by the fact that plaintiff filed other grievances and complaints during the relevant time period).

It is true that under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding. *Giano*, 380 F.3d at 678-79; *Johnson*, 380 F.3d at 697. However, such exhaustion is essentially limited to instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing, and (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate

that claim. *Murray,* No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *3 (collecting cases). Here, where plaintiff filed a grievance eleven days after the hearing, there is no indication that he reasonably believed that the disciplinary hearing was his only available remedy. In addition, the disciplinary hearing officer, defendant Cavaleri, informed plaintiff that his testimony regarding the assault was "not credible," and plaintiff declined to call any witnesses or question any witnesses. (Hall Aff., Dkt. No. 69-3, Ex. 4). No rational fact-finder could conclude that plaintiff had articulated or pursued his claim in a manner that afforded prison officials an opportunity to investigate his claim.

During the pendency of this litigation, plaintiff received a decision by the CORC, dated June 11, 2014, upholding the Superintendent's denial of the grievance. (Dkt. No. 73-2, Pl's Ex. 3(C)). While it is true that this decision means that plaintiff has now exhausted his administrative remedies, the Second Circuit has held that a plaintiff must exhaust his remedies ***before*** filing his federal action, and that the court must dismiss plaintiff's complaint notwithstanding his subsequent exhaustion. *Neal v. Goord,* 267 F.3d 116, 122-23 (2d Cir. 2001).

Because plaintiff failed to exhaust his administrative remedies by failing to wait for the CORC's decision, this court is constrained to recommend dismissing this complaint without prejudice. Plaintiff may immediately re-file his action on the First and Eighth Amendment claims because he has now exhausted his remedies. As in *Neal*, plaintiff may find that requiring him to initiate a new law suit is "judicially inefficient." *Id.*, 267 F.3d at 123. However, the Second Circuit specifically rejected

11

such an argument, finding that "if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Id.*

## II.    Due Process - Disciplinary Hearing

### A.    Plaintiff's Request for Voluntary Dismissal

Plaintiff amended his complaint in November 2013 to add a due process cause of action alleging deficiencies in the disciplinary hearing arising out of the incidents at Marcy.  (Dkt. No. 32).  The Amended Complaint was filed after plaintiff's administrative appeal was denied, and therefore plaintiff has exhausted his administrative remedies as to the due process issue. *See Chavis v. Goord,* No. 9:00-CV-1418 (LEK/DEP), 2007 WL 2903950 (N.D.N.Y. 2007) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)).  Defendants seek summary judgment on the merits of this claim, arguing that plaintiff was afforded all process that was due.

In response, plaintiff has requested that the court dismiss his due process claim, in order to focus on the alleged assault.  However, since plaintiff's request for dismissal comes after the defendants have answered (Dkt. No. 37) and moved for summary judgment (Dkt. No. 69), and the parties have not stipulated to dismissal, plaintiff has no right to a voluntary dismissal.  Fed. R. Civ. P. 41(a)(1).  Instead, dismissal lies in the discretion of the court. *See* Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."); *see also Lebewohl v. Heart*

*Attack Grill LLC*, 890 F. Supp. 2d 278, 304 (S.D.N.Y. 2012) ("A trial court has great discretion in considering whether to grant a motion for voluntary dismissal under the rule.").

The circumstances of this case weigh heavily in favor of denying plaintiff's motion for voluntary dismissal and deciding defendants' motion for summary judgment on the due process claim. These claims have been pending since 2013, and the parties have engaged in discovery, including the deposition of plaintiff. (Hall Aff., Dkt. No. 69-3, Ex. 1). Defendants filed a summary judgment motion, fully supported by numerous affidavits and exhibits, to dismiss plaintiff's claims with prejudice, in October 2014. (Dkt. No. 69). Plaintiff, who requested permission in November 2013 specifically to add the due process claims, provides no justification for withdrawing these claims, other than stating that his "complaint is not about the Tier Hearing nor Due Process regarding the tier hearing, but the factual facts that the defendants physically assaulted plaintiff. . . ." (Pl.'s Mem. of Law, Dkt. 73-1, at 3).

At this stage of the proceedings, it would be unfair and unduly prejudicial to the defendants to allow plaintiff to withdraw his due process claim, particularly given the potential that plaintiff may re-file this litigation in order to raise the now administratively exhausted assault claims. *See, e.g.*, *Murray v. Fischer,* No. 9:11-CV-225 (GLS/ATB), 2015 WL 457693, at *2-3) (denying prisoner's motion to dismiss certain claims without prejudice and granting defendants' motion for summary judgment instead); *Emory v. New York*, No. 11-CV-1774, 2013 WL 1881009, at *3 (E.D.N.Y. May 6, 2013) (denying plaintiffs' motion to dismiss action without prejudice

13

where plaintiffs failed to proffer reasons why their "voluntary" dismissal came so late in the litigation, and only after the defendants marshaled strong arguments in favor of dismissal in substantive motions, both because it reflects plaintiffs' lack of diligence and because it may subject defendants to the burden of relitigating these same claims); *Krivchenko v. Clintondale Aviation, Inc.*, No. 1:13-CV-820 (TJM), 2014 WL 4684808, at *4 (N.D.N.Y. Sept. 18, 2014) (denying voluntary motion to dismiss action, filed without adequate explanation after defendant filed a motion for summary judgment motion, because it indicates an "an undue vexatiousness" and could potentially subject the defendants to the burden of unnecessary relitigation). The court will now address the merits of plaintiff's due process claims.

## B.    Legal Standards

In order to begin a due process analysis, the court first determines whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determines whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84.

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004). A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest.

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

In certain cases, an inmate has a limited right to assistance with his disciplinary hearing. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). An assistant has been held to be constitutionally necessary in cases in which a plaintiff is confined in SHU, illiterate,

15

or unable to grasp the complexity of the issues, and therefore, unable to marshal evidence and present a defense. *Id*. (citation omitted). In those cases, the assistant must do what the plaintiff would have done if he were able, but need not go beyond the inmate's instructions. *Id*.

### C.    Application

Since the disciplinary hearing resulted in a one year sentence to the special housing unit ("SHU"), plaintiff is considered to have a liberty interest subject to due process protection. Plaintiff alleges that defendants issued him fabricated disciplinary tickets to cover up the alleged retaliatory assault, leading to procedural due process and privacy violations. It is well established that fabricated or false disciplinary charges do not violate an inmate's due process rights, so long as an inmate received a proper disciplinary hearing, with a determination based upon "some evidence." *See Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir. 1986). Therefore, the analysis focuses on the disciplinary hearing itself, and this court recommends that defendants' motion for summary judgment be granted.

### 1.    Adequacy of Assistance at the Hearing

Because he was transferred to the SHU after disciplinary charges relating to the threatening notes were filed against him, plaintiff was entitled to assistance in preparing for his hearing. *Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir. 1998) (citing *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988)). Plaintiff alleges that he requested assistance, but that the employee assistant, who is not named as a defendant, refused to help plaintiff locate relevant documents and threatened physical violence. (Amended

16

Compl., Dkt. No. 32, ¶ 68).

At the beginning of the disciplinary hearing, defendant Cavaleri inquired about the pre-hearing assistance, and asked whether plaintiff wanted to identify any witnesses or make any other requests before the hearing commenced. (Hall Aff., Dkt. No. 69-3, Ex. 4 at 4). At the close of the hearing, plaintiff was also given an opportunity to raise any issues on the record. (*Id.* at 36). Plaintiff declined to raise any issues before or after the hearing about the quality or conduct of his pre-hearing assistant. Plaintiff's bare allegations in the Amended Complaint, which do not identify the offending officer, are not sufficient to overcome defendants' motion for summary judgment. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case"). Moreover, even assuming for purposes of this motion that plaintiff's allegations are accurate, plaintiff waived any objection to inadequate assistance when he failed to raise the issue during the disciplinary hearing. *Jackson v. Johnson*, 30 F. Supp. 2d 613, 619 (S.D.N.Y. 1998) (plaintiff waived right to object to allegedly inadequate assistance when he did not raise the issue when questioned by hearing officer); *Hailey v. Provost*, No. 94-CV-1616 (RSP/DS), 1997 WL 627547 at *2 & n. 3 (N.D.N.Y., Oct. 9, 1997) (inmate waived right to effective employee assistance by specifically answering "no sir" after hearing officer asked if he needed any additional assistance).

## 2.    Use of OMH Information

Plaintiff alleges that defendant Cavaleri's consideration of testimony from State

Office of Mental Health ("OMH") staff regarding plaintiff's psychiatric and medical history violated his due process right to privacy. (Amended Compl., Dkt. No. 32, ¶ 71). Defendant Cavaleri advised plaintiff during the hearing that such testimony was admitted and would be considered, but did not disclose the contents of that evidence. Following policy, the OMH testimony was heard without the plaintiff present. (Hall Aff., Dkt. No. 69-3, Ex. 4 at 36).

In the United States Constitution, there exists a right to privacy, protecting an individual's interest in avoiding the disclosure of personal matters. *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). This right is protected by the Due Process Clause. *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) (citing *Whalen*, 429 U.S. at 598-600). The right to privacy has also been "characterized as a right to 'confidentiality,' which 'includes the right to protection regarding information about the state of one's health.'" *Matson v. Bd. of Ed. of City School Dist. of New York*, 631 F.3d 57, 64 (2d Cir. 2011) (quoting inter alia *Doe*, 15 F.3d at 267).

With respect to the "disclosure" of medical information, an inmate's privacy right varies with the inmate's condition, with a greater interest in preventing the disclosure of highly sensitive conditions. *Id.* (citations omitted). Prison officials may impinge upon the inmate's privacy right only to the extent that their actions are "reasonably related to legitimate penological interests." *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999).

The Second Circuit has concluded that the OMH policy of offering such

testimony outside the patient's presence during a prison disciplinary proceeding is constitutionally valid and does not violate any due process right. *See Powell v. Coughlin*, 953 F.2d 744, 749 (2d Cir. 1991). As the disclosure of unfavorable mental health evaluations in an inmate's presence will likely impair the inmate-clinician relationship, and the disclosure of favorable evaluations may encourage inmates to "act out" in order to obtain such findings, the policy of hearing mental health testimony outside the inmate's presence, followed in this case, is reasonably related to legitimate penological interests and is an appropriate measure. *Id.*

### 3. "Some" Evidence Standard

Plaintiff alleges that defendant Cavaleri was biased, that plaintiff's guilt was not based upon reliable evidence, and that Cavaleri failed to consider plaintiff's testimony, particularly about injuries following the alleged assault. (Amended Compl., Dkt. No. 32, ¶ 74). Defendants argue that the disciplinary hearing transcript shows that defendant Cavaleri explained plaintiff his rights, read him the charges and took his not guilty plea. (Def. Mem. of Law at 10-12). Plaintiff was allowed to offer testimony, and given the opportunity to call and question witnesses. (Hall Aff., Dkt. No. 69-3, Ex. 4 at 8-22). Plaintiff declined to propose questions for any witness. (*Id.*). When the witness testimony was concluded, plaintiff was given an opportunity to rebut their statements. (*Id.* at 26-30). After plaintiff raised the issue of injuries suffered in the alleged assault, defendant Cavaleri reviewed plaintiff's medical records with the assistance of a physician's assistant. (*Id.* at 35). When issuing his disposition, defendant Caveleri noted the consistent testimony of seven witnesses, and the lack of any evidence that

would support plaintiff's testimony (*Id.* at 39).

As the hearing officer, Defendant Cavaleri was authorized to make credibility determinations. *See Lewis v. Johnson*, No. 9:08-CV-482 (TJM/ATB), 2010 WL 3785771, at *11 n.25 (N.D.N.Y. Aug. 5, 2010) ("the Second Circuit has required that a hearing examiner make an independent assessment of the credibility of certain sources of evidence at a prison disciplinary hearing"), *Rep't. Rec. adopted*, 2010 WL 3762016, at *1 (N.D.N.Y. Sept. 20, 2010). It is well settled, however, "that prison disciplinary officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). "The degree of impartiality required of prison officials does not rise to the level of that required of judges generally." *Id.* An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact. *Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir.1989); *Clyde v. Schoellkopf*, 714 F. Supp. 2d 432, 437-38 (W.D.N.Y. 2010).

The constitutional standard for sufficiency of evidence in a prison disciplinary hearing is whether there is "some" or "a modicum" of evidence to support the hearing officer's determination. *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (citing *Superintendent v. Hill*, 472 U.S.445, 454 (1985)). In this case, there was sufficient evidence supporting the hearing officer's determination. Defendant Cavaleri specifically noted the consistent testimony of seven witnesses, and the lack of evidence to support plaintiff's testimony, which was deemed not credible.

The record evidence supports the conclusion that plaintiff's due process rights

were satisfied in his disciplinary hearing.  Accordingly, this court recommends that defendants' motion for summary judgment as to plaintiff's due process claims against defendant Cavaleri be granted.  Because his only involvement in plaintiff's claims was to affirm the results of a disciplinary hearing that this court has found comported with due process, summary judgment should also be granted with respect to defendant Prack[7].

## III.  State Law Claims

Plaintiff asserts a number of tort claims including assault and battery, invasion of privacy, sexual harassment, infliction of mental, emotional and physical distress and negligence in connection with the incidents at Marcy, all arising out of New York State statutory and common law. (Am. Compl., Dkt No. 32, ¶ 77, 79, 80, 82).  Defendants have moved for summary judgment dismissing these claims, arguing that pursuit of such tort claims in this action is statutorily precluded pursuant to New York Corrections Law § 24.  (Def. Mem. of Law, Dkt. No. 69-4, at 12-13).  Plaintiff counters that the United States Supreme Court ruled Corrections Law § 24 unconstitutional, and that, in any case, state law immunity does not extend to excessive force claims, which fall outside the ordinary scope of a correctional officer's employment duties.  (Pl.'s Mem. of Law, Dkt. No. 73-1,  at 9-12).

---

[7] The court notes that if plaintiff had stated a valid due process claim, the fact that defendant Prack affirmed the disciplinary finding could constitute sufficient personal involvement.  *See Thomas v. Calero*, No. 09-CV-5209, at *11-18 (S.D.N.Y. Mar. 17, 2011) (Rep't.-Rec.) (lengthy discussion of personal involvement as it relates to the affirmance of a disciplinary hearing and determination that such a claim would survive a motion to dismiss); *Rodriguez v. Selsky*, No. 9:07-CV-432, 2011 WL 1086001, at *4-7 (N.D.N.Y. Jan. 25, 2011) (Rep't-Rec.), *adopted*, 2011 WL 830639 (N.D.N.Y, Mar. 3, 2011).

New York Corrections Law § 24 precludes "the assertion of claims against corrections officers in any court, including the federal courts," by designating the New York State Court of Claims as the only available venue to bring a claim for damages arising out of the acts committed by corrections officers within the scope of their employment." *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996).

In *Haywood v. Drown*, 556 U.S. 729 (2009), cited by plaintiff in his response (Pl's Mem. of Law, Dkt. No. 73-1, at 11), the Supreme Court held that New York Corrections Law § 24 was unconstitutional to the extent that it precludes inmates from pursuing § 1983 actions in state or federal court. However, plaintiff overstates the scope of *Haywood* as it pertains to this litigation.

Although the *Haywood* decision found New York Corrections Law § 24 to be in violation of the Supremacy Clause, it did so only with respect to claims brought under federal law, such as § 1983. In applying supplemental jurisdiction, federal courts are bound to apply state substantive law to claims brought pursuant to state statute or common law. *Baker,* 77 F.3d at 15. The courts of this district have unanimously held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS officials. *See, e.g., Rucano v. Koenigsmann,* No. 9:12-CV-35 (MAD/RFT), 2014 WL 1292281, *16 (N.D.N.Y., Mar. 31, 2014); *Rounds v. Thompson*, No. 9:12-CV-953, 2013 WL 3187074 at *4 (N.D.N.Y. 2013) (collecting cases). If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court must not allow that claim to be appended to a federal law claim in federal court. *Baker,* 77 F.3d at 15.

Plaintiff alleges that he was assaulted during a pat-down by correctional officers as he traversed a prison walkway, and then again while being transported and questioned about the incident. (Amended Compl. Dkt No. 32, ¶ 24-43). Transporting an inmate and subduing that individual, should a disciplinary issue arise, is 'common conduct by a DOCCS officer or sergeant.'" *Crosby v. Russell*, No. 9:10-CV-595, 2014 WL 3809129, *5 (N.D.N.Y. 2014) (quoting *Johnson v. N.Y. State Dep't of Corr. Servs. & Cmty. Supervision*, No. 11–CV–0079, 2013 WL 5347468, at *3 (W.D.N.Y. Sept. 23, 2013)). Ultimately, "an employee will be considered within the scope of his employment so long as he is discharging his duties, 'no matter how irregularly, or with what disregard of instructions.'" *Id.,* 2014 WL 3809129, *6 (quoting *Cepeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987)). Therefore, based upon the allegations in the amended complaint, this court recommends that defendants' motion for summary judgment as to plaintiff's state law claims be granted, without leave to amend.

Even if New York Corrections Law § 24 did not apply, this court would still recommend dismissal of plaintiff's state law claims in light of the recommendations of dismissal of all federal causes of action in plaintiff's amended complaint. *See* 28 U.S.C. § 1367(c)(3) (the district court may decline to exercise supplemental jurisdiction over a claim if all other claims over which the court has original jurisdiction have been dismissed); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997); *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 69) be **GRANTED**, and that plaintiff's First Amendment and Eighth Amendment Claims be **DISMISSED WITHOUT PREJUDICE TO REFILING**, and that plaintiff's due process and state law claims be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated**: May 20, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge